THE ESTATE OF HARRY KAY BURGESS, JR., BY THE EXECUTRIX OF HIS ESTATE FRANCES LOUISE BURGESS, AND FRANCES LOUISE BURGESS, IN HER INDIVIDUAL CAPACITY, PLAINTIFFS v. RAYMOND HAMRICK, IN HIS OFFICIAL CAPACITY AS CLEVELAND COUNTY SHERIFF, PAUL LEIGH, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS A SHERIFF'S DEPUTY OF CLEVELAND COUNTY, LIBERTY MUTUAL GROUP D/B/A LIBERTY MUTUAL INSURANCE COMPANY, DEFENDANTS

No. COA09-1690

(Filed 3 August 2010)

**1. Appeal and Error— interlocutory orders and appeal— governmental or sovereign immunity—substantial right affected**

The Court of Appeals addressed the merits of defendants' appeal from the trial court's denial of their motion for summary judgment, despite the interlocutory nature of the appeal. Issues of governmental or sovereign immunity affect a substantial right sufficient to warrant immediate appellate review.

**2. Immunity— public duty doctrine—discretionary acts— indirect harm—shield from liability**

The trial court erred in denying defendants' motion for summary judgment in a negligence action. The public duty doctrine applied to shield defendant police officers from liability in their official capacities for their discretionary acts that indirectly caused harm to plaintiff's decedent.

**3. Immunity— public duty doctrine—no applicable exception**

The trial court erred in denying defendants' motion for summary judgment in a negligence action. The public duty doctrine applied to shield defendant police officers from liability for their alleged negligence and no exception to the public duty doctrine applied.

**4. Immunity— sovereign immunity—public officer—mere negligence**

The trial court erred in denying defendant police officer's motion for summary judgment in a negligence action. Defendant was a public officer being sued in his individual capacity, and he was entitled to immunity for his actions which were not corrupt, malicious, or outside the scope of his official duties.

Appeal by defendants from order entered 18 November 2009 by Judge Nathaniel J. Poovey in Cleveland County Superior Court. Heard in the Court of Appeals 12 May 2010.

*The Bumgardner Law Firm, by Thomas D. Bumgardner, for plaintiffs-appellees.*

*Womble Carlyle Sandridge & Rice, PLLC, by Sean F. Perrin, for defendants-appellants.*

HUNTER, Robert C., Judge.

Defendants appeal from the trial court's order denying their motion for summary judgment. After careful review, we reverse and remand.

## Background

On the evening of 12 October 2007, Cleveland County Sheriff's Deputy Paul Leigh ("Deputy Leigh") responded to an alleged incident of domestic violence at 210 Cedar Street in Shelby, North Carolina. When Deputy Leigh arrived at the scene, he spoke with Frances Burgess ("plaintiff") in her driveway concerning her call to the police. Plaintiff claimed that her husband, Harry Burgess ("Mr. Burgess"), was intoxicated and had hit her. In her deposition, plaintiff stated: "I told [Deputy Leigh] that [Mr. Burgess] was drunk, highly drunk. I said, he's drunk, he's crazy, he's seeing things. . . ." Upon visual inspection, Deputy Leigh did not see any evidence of physical violence perpetrated against plaintiff. Plaintiff asked Deputy Leigh to arrest her husband, but he responded that he could not do so since there was no evidence that a crime had been committed. Deputy Leigh offered to drive plaintiff to the magistrate's office so that she could "swear out a warrant" against her husband. Plaintiff declined the offer but asked Deputy Leigh to come in the house and speak with Mr. Burgess.

Deputy Leigh entered the living room of the house and observed that Mr. Burgess was calmly sitting on the couch. Deputy Leigh engaged in a conversation with Mr. Burgess and, according to his deposition testimony, Mr. Burgess "spoke to [him] in a respectful manner about the situation." Deputy Leigh further testified that Mr. Burgess' "speech seemed fine" and he made no inconsistent responses to questions asked. Plaintiff claimed in her deposition that there was a bottle of liquor in plain site and that at one point Mr. Burgess fell down the stairs in the garage.

According to Deputy Leigh, plaintiff told Mr. Burgess that he had to "go somewhere for the night." Deputy Leigh then offered to give Mr. Burgess a ride "to a motel or wherever he needed to go." Mr. Burgess stated that he did not have any relatives close by and agreed to go to a motel. As they left the house, Mr. Burgess asked Deputy Leigh, " 'do I drive or do you drive?' " Deputy Leigh responded, "no, you ride with me. I'll take care of you." Mr. Burgess walked out of the house without assistance and sat in the back of the police car. Deputy Leigh claimed that he told plaintiff that he was giving Mr. Burgess a ride to the Days Inn located on Highway 74, but plaintiff claimed in her deposition that she did not know where Deputy Leigh was taking her husband; she assumed he was being taken to jail or to a hospital due to his inebriated condition.

Deputy Leigh transported Mr. Burgess to the Days Inn, which was approximately three miles from Mr. Burgess' house. A motel clerk, who was standing outside the Days Inn, asked Deputy Leigh if he needed assistance, and Deputy Leigh stated "[t]hat Mr. Burgess was possibly going to get a room at the hotel." At that point, Mr. Burgess asked Deputy Leigh to give him a ride back home, to which Deputy Leigh responded: "I am not a taxi service." Mr. Burgess then asked Deputy Leigh to let him out of the back seat. Mr. Burgess exited the vehicle and Deputy Leigh drove away from the Days Inn. Shortly thereafter, Deputy Leigh received a dispatch requesting his presence at another location. Approximately two hours later, Deputy Leigh was notified that Mr. Burgess had been struck by a car while attempting to cross Highway 74. Mr. Burgess died on 31 October 2007. The coroner's report indicated that Mr. Burgess' blood alcohol level was .37.

On 20 January 2009, plaintiff was appointed as executrix of her husband's estate. On 20 July 2009, plaintiff filed a Second Amended Complaint[1] against Cleveland County Sheriff Raymond Hamrick in his official capacity, Deputy Leigh in his official and individual capacity, and Liberty Mutual Group d/b/a Liberty Mutual Insurance Company (collectively "defendants"). Plaintiff asserted a negligence cause of action as well as a claim for wrongful death on behalf of the estate of Mr. Burgess. Plaintiff also sued defendants for negligent infliction of emotional distress. On 21 October 2009, defendants filed a motion for summary judgment claiming, *inter alia*, that the public duty doctrine and sovereign immunity barred plaintiff's claims. On 30 October 2009, plaintiff filed a response to defendants' motion for summary judgment as well as a cross-motion for summary judgment.

---

1. Plaintiff's original complaint is not contained in the record on appeal.

On 18 November 2009, Judge Nathaniel J. Poovey issued an order denying the parties' motions for summary judgment. Defendants timely appealed to this Court.

## Interlocutory Nature of Appeal

[1] Defendants in this case moved for summary judgment on the basis of the public duty doctrine and sovereign immunity. An order denying a motion for summary judgment is interlocutory because it "does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). As a general rule this Court does not review interlocutory orders; "[h]owever, an appeal based on the public duty doctrine 'involves a substantial right warranting immediate appellate review.' " *Estate of McKendall v. Webster*, 195 N.C. App. 570, 572, 672 S.E.2d 768, 770 (2009) (quoting *Cockerham-Ellerbee v. Town of Jonesville*, 176 N.C. App. 372, 374, 626 S.E.2d 685, 687 (2006)). Additionally, "this Court has repeatedly held that appeals raising issues of governmental or sovereign immunity affect a substantial right sufficient to warrant immediate appellate review" pursuant to N.C. Gen. Stat. § 1-277(a). *Price v. Davis*, 132 N.C. App. 556, 558-59, 512 S.E.2d 783, 785 (1999). Accordingly, we address the merits of defendants' appeal despite its interlocutory nature.

## Standard of Review

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2009). A grant of summary judgment is reviewed *de novo* by this Court. *Falk Integrated Technologies, Inc. v. Stack*, 132 N.C. App. 807, 809-10, 513 S.E.2d 572, 574 (1999). On appeal, this Court must determine: " '(1) whether there is a genuine issue of material fact and (2) whether the movant is entitled to judgment as a matter of law.' " *McCoy v. Coker*, 174 N.C. App. 311, 313, 620 S.E.2d 691, 693 (2005) (quoting *NationsBank v. Parker*, 140 N.C. App. 106, 109, 535 S.E.2d 597, 599 (2000)). All inferences of fact are made in favor of the nonmoving party. *Id.* "For the case at bar, we must discern whether, upon review of the evidence in a light most favorable to plaintiff's claims, judgment as a matter of law should have been entered in favor of defendants upon the assertion of the defense[] of the public duty doctrine . . . ." *Lassiter v. Cohn*,

168 N.C. App. 310, 315, 607 S.E.2d 688, 691, *disc. review denied*, 359 N.C. 633, 613 S.E.2d 686 (2005).

## Discussion

### I. Application of the Public Duty Doctrine

**[2]** In a claim for negligence, there must exist a "legal duty owed by a defendant to a plaintiff, and in the absence of any such duty owed the injured party by the defendant, there can be no liability." *Hedrick v. Rains*, 121 N.C. App. 466, 469, 466 S.E.2d 281, 283 (internal citation omitted), *aff'd per curiam*, 344 N.C. 729, 477 S.E.2d 171 (1996). "[W]hen the public duty doctrine applies, the government entity, as the defendant, owes no *legal* duty to the plaintiff." *Blaylock v. N.C. Dep't of Correction*, —— N.C. App. ——, ——, 685 S.E.2d 140, 143 (2009), *disc. review denied*, 363 N.C. 853, 693 S.E.2d 916 (2010).

Our Supreme Court first adopted the public duty doctrine in *Braswell v. Braswell*, 330 N.C. 363, 370-71, 410 S.E.2d 897, 901 (1991) (internal citation omitted), stating:

> The general common law rule, known as the public duty doctrine, is that a municipality and its agents act for the benefit of the public, and therefore, there is no liability for the failure to furnish police protection to specific individuals. This rule recognizes the limited resources of law enforcement and refuses to judicially impose an overwhelming burden of liability for failure to prevent every criminal act.

In *Braswell*, a woman was killed by her estranged husband and her son, as administrator of his deceased mother's estate, filed suit against the county sheriff, alleging that the sheriff had negligently failed to protect the plaintiff's mother from foreseeable harm. *Id.* at 366, 410 S.E.2d at 899. The Supreme Court rejected the plaintiff's argument and concluded that the public duty doctrine shielded the sheriff from liability. *Id.* at 371-72, 410 S.E.2d at 901-02.

After *Braswell*, the application of the public duty doctrine in this State expanded and was "interpreted to apply to public duties beyond those related to law enforcement protection." *Lassiter*, 168 N.C. App. at 316, 607 S.E.2d at 692; *see generally Moses v. Young*, 149 N.C. App. 613, 616-17, 561 S.E.2d 332, 334-35 (providing in depth analysis of case law since *Braswell*), *disc. review denied*, 356 N.C. 165, 568 S.E.2d 199 (2002). In *Lovelace v. City of Shelby*, 351 N.C. 458, 526 S.E.2d 652 (2000), however, our Supreme Court "sought to reign in the expansion of the public duty doctrine's application to other gov-

ESTATE OF BURGESS v. HAMRICK

[206 N.C. App. 268 (2010)]

ernment agencies and ensure it would be applied in the future only to law enforcement agencies fulfilling their 'general duty to protect the public,' and thus reasserted the principles of *Braswell*." *Lassiter*, 168 N.C. App. at 317, 607 S.E.2d at 692 (quoting *Lovelace*, 351 N.C. at 461, 526 S.E.2d at 654).

This Court recently held in *Scott v. City of Charlotte*, —— N.C. App. ——, ——, 691 S.E.2d 747, 752 (2010):

> Though our courts have both expounded upon and narrowed the application of the public duty doctrine since 1991, *Braswell* and its progeny have not wavered from the general principle that when a police officer, acting to protect the general public, indirectly causes harm to an individual, the municipality that employs him or her is protected from liability. This principle is grounded in the notion that an officer's duty to protect the public requires the officer to make discretionary decisions on a regular basis, whether it be responding to an alleged threat by an abusive spouse or clearing the scene of a car accident.

In *Scott*, we held that the public duty doctrine applied to bar plaintiff's negligence claims against the City of Charlotte where police officers did not call for medical assistance when Mr. Scott was pulled over on suspicion of drunk driving. *Id.* at ——, 691 S.E.2d at 755. Mr. Scott appeared "to be physically impaired in some respect[,]" but he did not ask the officers to call for medical assistance and the evidence indicated that he declined medical assistance when asked if he needed it. *Id.* at ——, 691 S.E.2d at 749. Upon further inquiry, the officers determined that Mr. Scott was having a reaction to medications he was taking for high blood pressure and medications related to a stroke he suffered the previous spring. *Id.* The officers called Mr. Scott's wife and requested that she come pick Mr. Scott up. *Id.* The officers then took Mr. Scott's car keys and left him in a Pep Boys parking lot to wait for his wife. *Id.* Unbeknownst to the officers, Mr. Scott was suffering from a stroke and he later collapsed in the Pep Boys parking lot and died the following day. *Id.* at ——, 691 S.E.2d 749-50. This Court held that the officers, while engaging in their duties to protect the general public, performed discretionary acts that indirectly caused harm to Mr. Scott and that the public duty doctrine was, therefore, applicable. *Id.* at ——, 691 S.E.2d at 753. Furthermore, in *Scott*, this Court rejected the argument that application of the public duty doctrine is strictly limited to situations where the plaintiff is injured by the acts of a third party. *Id.* at ——, 691 S.E.2d at 751-52.

In the present case, Deputy Leigh was engaged in his role as a police officer protecting the general public when he arrived at the home of plaintiff and Mr. Burgess on 12 October 2007. Upon determining that there was no evidence that a crime had been committed, Deputy Leigh attempted to diffuse the situation between plaintiff and Mr. Burgess since plaintiff claimed that Mr. Burgess was drunk and had hit her. Plaintiff also asserted her desire for Mr. Burgess to spend the night elsewhere. Deputy Leigh, in his discretion, then offered to transport Mr. Burgess to a family member's home or a motel. Mr. Burgess opted to spend the night at a motel and Deputy Leigh took him to the nearby Days Inn. It is undisputed that Deputy Leigh left Mr. Burgess at the entrance of the Days Inn and did not observe him check in or accompany him to his room; however, plaintiff has failed to establish that a legal duty existed for Deputy Leigh to continue to supervise Mr. Burgess after escorting him to the Days Inn. Deputy Leigh made a discretionary decision, to leave Mr. Burgess at the front door to the Days Inn. Arguably, Mr. Burgess was indirectly harmed as a result of that decision. Nevertheless, the instant case presents the type of factual scenario that gives rise to application of the public duty doctrine. As stated *supra*, this Court recently held that the public duty doctrine serves to shield defendants from liability where "a police officer, acting to protect the general public, indirectly causes harm to an individual" through his discretionary acts. *Id.* at ——, 691 S.E.2d at 751. Accordingly, we hold that the public duty doctrine applies in this case to shield defendants Hamrick and Leigh from liability in their official capacities.

II. Application of the Exceptions to the Public Duty Doctrine

**[3]** Plaintiff argues that, if the public duty doctrine is applicable, the two recognized exceptions apply.

> There are two generally recognized exceptions to the public duty doctrine: (1) where there is a *special relationship* between the injured party and the police, for example, a state's witness or informant who has aided law enforcement officers; and (2) when a municipality, through its police officers, creates a *special duty* by promising protection to an individual, the protection is not forthcoming, and the individual's reliance on the promise of protection is causally related to the injury suffered.

*Braswell,* 330 N.C. at 371, 410 S.E.2d at 902 (emphasis added) (citation and quotation marks omitted).

First, we must determine if a special relationship existed between Deputy Leigh and Mr. Burgess.

> Those instances where our Courts have intimated that a special relationship exists relate to some affirmative step taken by the police. These steps either provide a *quid pro quo* with a state's witness or informant where a plaintiff would rely on an agreement with law enforcement, the basis of which most likely includes bargained for police protection in exchange for inculpatory testimony or information . . . .

*Lassiter*, 168 N.C. App. at 320, 607 S.E.2d at 694. Mr. Burgess was not a State's witness or informant for purposes of the special relationship exception, nor was there any understood agreement or *quid pro quo*. Therefore, we hold that no special relationship existed in this situation.

Plaintiff further argues that Mr. Burgess was in police custody when he was transported to the Days Inn. "This Court has previously held that a 'special relationship' exists when the plaintiff is in police custody." *Multiple Claimants v. N.C. Dep't of Health & Human Servs.*, 176 N.C. App. 278, 293, 626 S.E.2d 666, 676 (2006) (citing *Hull v. Oldham*, 104 N.C. App. 29, 38, 407 S.E.2d 611, 616 (1991)), *aff'd as modified*, 361 N.C. 372, 646 S.E.2d 356 (2007). An individual may be in custody if there is "a restraint on freedom of movement of the degree associated with a formal arrest." *State v. Gaines*, 345 N.C. 647, 662, 483 S.E.2d 396, 405 (1997). "To determine whether a person is in custody, the test is whether a reasonable person in the suspect's position would feel free to leave." *Id.* Based on the undisputed evidence of the interaction between Mr. Burgess and Deputy Leigh, we hold that Mr. Burgess was never in police custody. Deputy Leigh told plaintiff and Mr. Burgess that he saw no reason to arrest Mr. Burgess. Deputy Leigh then gave Mr. Burgess a ride in the police car, but at no time was Mr. Burgess handcuffed or restrained in any way. A reasonable person in that situation would not feel that he or she was in police custody. Plaintiff's argument is without merit.

Plaintiff also claims that the special duty exception applies in this case. We disagree. Before departing for the Days Inn, Mr. Burgess asked how they were going to proceed to the motel, and Deputy Leigh responded: "[Y]ou ride with me. I'll take care of you." This statement was not a specific promise of police protection; rather, these words constituted no more than "general words of comfort and assurance . . . ." *Braswell*, 330 N.C. at 371, 410 S.E.2d at 902. Even

assuming, *arguendo*, that Deputy Leigh's statement was a specific promise, the promise could not possibly be construed to mean that Deputy Leigh would ensure that no harm came to Mr. Burgess that entire evening. If the words were, in fact, a promise, then the promise was to transport Mr. Burgess to the Days Inn safely, a promise which was fulfilled.

In sum, the public duty doctrine is applicable in this case, and there is no exception that would result in imposition of liability. Consequently, the trial court erred in denying defendants' motion for summary judgment with respect to the negligence claims asserted as well as the claim for wrongful death.

### III. Individual Capacity Claim

[4] Plaintiff in the present case brought suit against Deputy Leigh in his individual capacity. Deputy Leigh is a public official for purposes of application of sovereign immunity. *Marlowe v. Piner*, 119 N.C. App. 125, 128, 458 S.E.2d 220, 223 (1995).

"[I]f a public officer is sued in his individual capacity, he is entitled to immunity for actions constituting mere negligence, but may be subject to [personal] liability for actions which are *corrupt, malicious or outside the scope of his official duties.*" *Epps v. Duke University*, 116 N.C. App. 305, 309, 447 S.E.2d 444, 447 (1994) (emphasis added).

> The essence of the doctrine of public official immunity is that public officials engaged in the performance of their governmental duties involving the exercise of judgment and discretion, and acting within the scope of their authority, may not be held liable for such actions, in the absence of malice or corruption.

*Price*, 132 N.C. App. at 562, 512 S.E.2d at 787. "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *In re Grad v. Kaasa*, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984). " 'An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others.' " *Id.* at 313, 321 S.E.2d at 890-91 (quoting *Givens v. Sellars*, 273 N.C. 44, 50, 159 S.E.2d 530, 535 (1968)).

Upon review of the record, it is clear that Deputy Leigh's actions were not corrupt, malicious, or outside the course and scope of his

ESTATE OF BURGESS v. HAMRICK

[206 N.C. App. 268 (2010)]

authority. Deputy Leigh attempted to intervene and defuse a potential domestic violence situation by taking Mr. Burgess to a motel where he could spend the night. Deputy Leigh dropped Mr. Burgess off at the Days Inn as he agreed to do. Consequently, plaintiff's claims against Deputy Leigh in his individual capacity cannot stand and the trial court erred in denying defendants' motion for summary judgment with respect to Deputy Leigh in his individual capacity.

### Conclusion

We hold that the public duty doctrine applies in this case as a complete bar to plaintiffs' claims against defendants Hamrick and Leigh in their official capacities. Furthermore, plaintiffs' claims against Deputy Leigh in his individual capacity are without merit. Consequently, the trial court erred in denying defendants' motion for summary judgment. Because our holding disposes of all of plaintiffs' claims, we need not discuss defendants' remaining arguments with regard to sovereign immunity.

Reverse and Remand.

Judges GEER and STEPHENS concur.